### REIGLE *against* SEIGER, for the use of HEPNER.

#### IN ERROR.

A son who accepts his father's land at a valuation in the Orphans' Court, takes it subject to interest on a third of the valuation, where there is a widow, and to payment of the other children's shares of the principal at her death. In respect to his own share, he has nothing to pay or to receive.

Being in his own hands it is paid presently by operation of law; and where land so taken, is sold at sheriff's sale expressly subject to the payment of the whole-third of the valuation at the widow's death, such son can never recover any portion of that third.

A sheriff is bound to sell the debtor's whole interest in the land, and can lawfully reserve nothing for him, either in the land or the price of it; and any contract to do this in prejudice of the lien-creditors would be positively illegal, and no action could be sustained, nor can the defendant by any transfer to another, give a right to enjoy the fruit of such a contract.

The only remedy for a misrepresentation, not fraudulent, but affecting the rights of either party to a sheriff's sale, is an application to set aside the sale.

ERROR to the Court of Common Pleas of *Berks* county, to remove the judgment of that court upon the following case, stated in the nature of a special verdict.

*Michael Seiger* died, leaving a widow and eight children, and seized of a plantation, containing one hundred and twenty acres. The said tract of land, was valued and appraised at the sum of £1630, under a proceeding in the Orphans' Court for that purpose, and on the 7th of April, 1810, it was adjudged to *Jacob Seiger* the eldest son of the intestate, at the valuation.

*Jacob Seiger* entered into the possession of said tract of land, and while in possession, to August term, 1820, an action was instituted against him at the suit of *Daniel Hill*, in the Court of Common Pleas of *Berks* county, in which judgment was rendered on the 1st day of July, 1820. Security was entered to obtain a stay of execution on this judgment, by *Christian Hepner*, for whose use this suit is brought. On this judgment the property taken by *Seiger*, was levied on and sold by the sheriff, to *George Reigle*, the defendant below, on the 19th December, 1821, for $668 upon the following condition, which were set up by the sheriff, at the sale, and after the sale was made, signed and acknowledged by the purchaser.

#### "CONDITIONS OF SHERIFF'S SALE."

"The subscriber, sheriff of the county of *Berks*, offers to sell by public sale, and by virtue of a writ of *venditioni exponas*, a certain tract of land, containing 122 acres, more or less. The estate of *Jacob Seiger, subject to the payment of a dower of five hun-*

(Reigle *v.* Seiger.)

*dred and forty three pounds six shillings and eight pence,* the interest thereof to be paid yearly, unto the widow of *Michael Seiger,* deceased, and after her death, the principal to be paid *to the heirs* of the said deceased.

HENRY BETZ, <i>Sheriff.</i>"

"I the subscriber do hereby acknowledge, that I have bidden for the estate above mentioned the sum of six hundred dollars and that I have become the purchaser on the terms above stated.

"Witness my hand and seal, the day and year above mentioned.

GEORGE REIGLE, [L. s.]

WITNESS, ADOLPH HATZFIELD."

The sheriff's deed was acknowledged to *Reigle,* who took possession under it, which was continued ever since.

The widow of *Michael Seiger,* the intestate, died on the 1st day of January, 1826. The purchase money arising on the sale to *Reigle,* was applied towards the payment of the recognizance in the Orphans' Court, to the heirs of *Michael Seiger;* and a scire facias was issued against *Christian Hepner,* the security to obtain the stay of execution, upon which he was compelled to pay the judgment of *Hill,* against *Seiger:* in consideration of which *Jacob Seiger,* on the 1st day of June, 1822, by an instrument under seal assigned and transferred to the said *Hepner,* one-eighth part of the third of the purchase money, "due and payable at the death of the widow of the said *Michael Seiger,* out of the plantation of the said deceased, now in the possession of *George Reigle,* being his share out of the said third of the said plantation."

The following judgments remained open and unsatisfied against the said *Jacob Seiger,* at the time of the sale and continue still unpaid: *Adam Kaiser* v. *Jacob Seiger,* of November term, 1819, judgment 1st November, 1819, for £123. *Belson* v. *the same,* of November term, 1820, judgment 9th December, 1820, for $40,07. *Wolf's* executors *v. the ssame,* of April term, 1820, judgment 10th April, 1820, for $165,50.

The Court of Common Pleas gave judgment in favor of the plaintiff below and defendant in error.

*Smith* for the plaintiff in error.

Under the act of assembly by virtue of which this estate was adjudged to *Jacob Seiger,* he took his share in the land, and the principal sum, the interest of which he was bound by the decree of the Orphans' Court, to pay to the widow annually, at her death, "shall be paid" by him, and "shall be distributed and divided to and amongst the said children of her husband." *Purdon Digest;*

(Reigle *v.* Seiger.)

407. Act of the 19th March, 1794—section 22. He is to pay to whom? not to himself, but to the said children of the intestate. It is a well settled principle, that when the same hand is to receive which is to pay, the debt, is extinguished, so where a legacy is charged on land and the land comes to the legatee, the charge is merged, *Wankford* v. *Wankford, Salk.* 350. *Thomas* v. *Thompson,* 2 *John R.* 471. *Griffith* v. *Chew's* executors, 8 *Serg. & Rawle,* 17. *Duke Chandos.* v. *Talbot,* 2 *P. Will.* 640.

Then although he was compelled to pay interest, during the life of the widow, on the one-third of the valuation of the entire tract, so far as respects his own proportion of the principal of that third the debt was extinguished and paid.

The purchaser at sheriff's sale, took the same interest which was vested in the defendant. The language of the act of 1700, *Pur. Dig.,* 288, sect. 1st, is, "After which sale and appraisement, made as aforesaid, such land and houses shall be and remain a free and clear estate to the purchaser or creditor to whom they are so made over or sold, his heirs and assigns forever, as fully and amply as ever they were to the debtors." The estate vested by the sheriff's sale, is as full and ample, as that of which the defendant was seized, and it was not competent to the sheriff to convey a less estate than the defendant had. The interest of the defendant in the land included his share of the valuation, the interest of which he was to pay the widow during her life, and passed to the purchaser. If, however, any such interest existed after the sale, it would go to the judgment creditors of *Seiger,* and he could not transfer it.

Viewed as an incumbrance, the sheriff's sale extinguished it, *Welsh* v. *Beckey,* 1 *Penn. Rep.* 57.

*Baird* for the defendant, in error.

It was a matter of no moment what were the rights of the parties anterior to the sheriff's sale; in that sale, circumstances arose which estop the defendant to deny the right of the plaintiff to recover. The conditions of this sale, bind him to the payment which is sought to be enforced; the sheriff's deed conforms to these conditions, and the plaintiff in error, went into possession under it, and now seeks to hold it in contravention of these conditions at a less sum than he agreed to give.

He bound himself by those conditions to pay £543 6s, at the death of the widow "to the heirs of the said deceased." It is the entire sum which he engaged to pay, and to all the heirs of said deceased, of whom *Jacob Seiger* was one. He shall not now be permitted to say it was less than £543 by the share of *Jacob,* and

(Reigle *v.* Seiger.)

pocket this share against his positive agreement; but for which the land would have sold for so much more. If this transaction were a mistake on the part of the sheriff, it would have been a good ground upon which to ask the court to set the sale aside; but as this course was not pursued, this mistake would not confer upon the purchaser a right to hold the land against his own agreement for less than he agreed to give.

The interest which the plaintiff claimed to recover, was a monied interest, which by his own deed the purchaser undertook to pay, and by this deed, he is estopped to say it is an interest in land which by that deed was transferred to him. There are many cases of estoppel not so strong as this.

Where it is recited in the condition of a bond, that the obligor had received divers sums of money for the obligee, which he had not brought to account, but acknowledged that a balance was due to the obligee; the obligee was estopped to say he had not received any money for the use of the obligor. *Shelley* v. *Wright, Wills Rep.* 9.

If a defendant suffer judgment to go against him by default in an action for damages, he is estopped to deny that any damages had been sustained. So where an administrator confesses judgment, he cannot deny assets to satisfy that judgment.

If a man take a lease of his own land, he would be estopped to deny the title of the landlord. *Whealer* v. *Board,* 12 *John R.,* 363. *Coke. Lit.* 352. *Ewin* v. *Desilver,* 8 *Serg. & Rawle,* 92. 4 *Peters R.* 85. *Feather's appeal,* 1 *Penn. Rep.* 322.

He denied that the purchaser would take the entire interest of the defendant, although by the terms of the sheriff's sale, a less interest was sold and conveyed to him, as if the sheriff should sell and convey a life estate, when the defendant was invested with a fee-simple, the purchaser would not take more than he bought.

The judgment creditors had never claimed; their lien had run out and the court would not create a party to interpose between the plaintiff and defendant, who presents the case of a surety, a case of peculiar equity.

The opinion of the court was delivered by

GIBSON, C. J.—A son who accepts his father's land at a valuation in the Orphans' Court, takes it subject to interest on a third of the valuation, where there is a widow, and to payment of the other children's shares of the principal at her death. In respect of his own share, he has nothing to pay or to receive. Being in his own hands, it is paid presently by operation of law, and having no debt due from the land or lien on it, he can have no colour of title to

44

any part of the purchase money, or advantage to be derived from a sale on a judgment against himself. Admitting this as an abstract principle, it is said that as the sheriff sold expressly subject to payment of the whole third of the valuation at the widow's death, the defendant will get the land for less by the value of a child's share, than he engaged to pay, unless he be liable in this action. But what of that, if he did not engage to pay *to the plaintiff?* It would be little to the purpose, to shew that the defendant is not entitled to retain, unless it were shewn that the plaintiff is entitled to receive. But he can have no title to receive, unless as a party to the contract supposed to result from the conditions of the sheriff's sale. The sheriff, however, being bound to sell the debtor's whole interest in the land, can lawfully reserve nothing for him, either in the land, or what is substantially the same, in the price of it; for to sell *subject to the* payment of money to him, when nothing is, or can be due, would be a fraud on the lien creditors. No one will pretend, that the sheriff can charge the land in the hands of the purchaser, in favor of the debtor, and thus in effect abstract so much from the proceeds of the sale. We have then the case of a plaintiff who sues on an alleged contract, which, by his own shewing, is positively illegal. It is wide of the mark, to say the acceptance of the deed, estops the defendant from denying the contract. Even had the deed contained that precise affirmation of the fact, which is necessary to every estoppel, the illegality of the contract, would be an impassible barrier to the action. But the object, as well as the office of the conditions of sale, was not to fix the extent of the incumbrance, but to give notice of its existence. Possibly the conditions were thought necessary to signify that the sheriff would sell subject to this incumbrance under a mistaken belief that he had power to sell clear of it. But nothing more than the naked fact could have been intended to be signified; for no one can suspect a design to reserve more than should be found actually charged on the land by the law. How then can the plaintiff recover against the true intent of the parties, what was not meant to be reserved for him? Having notice of the existence of the incumbrance, the purchaser was bound to judge from the record, of its extent, the sheriff being neither competent to determine that matter, nor responsible for the truth of his information. The purchaser certainly could not have compelled him to refund the difference, had the amount of the incumbrance proved to be greater than it was represented to be. But even to give notice of incumbrances, which appear of record, is no part of the sheriff's business; and as to the office of conditions to indicate that the sale was to be subject to this particular charge, that matter was fixed by the law, instead of being dependent on the will of any one. It

(Reigle *v.* Seiger.)

seems to me, therefore, it would be fraught with mischief to suffer the officer to vary the rights or the responsibilities of the parties, by an officious act.

It has been suggested that the plaintiff may recover, if not for his own benefit, at least for that of the creditors. But the purchaser did not contract with him for the benefit of any one, and beside, the process of collecting the proceeds in the name of any one else than the sheriff, is certainly an unusual one. And it seems to me that even the creditors have no title to the money, either legal or equitable. The interest sought to be recovered, was not bound by judgment, because it had no existence as a part of the lands, having been created, if at all, by the conditions of a sale which worked an extinguishment of the liens. Neither is it part of the purchase money; for that, by the exigence of the writ, is to be brought into court, and it consequently consists of the sum for which the premises have been sold subject to, or free-of, incumbrances. The purchaser having taken on himself the risk of the incumbrances which are not to be extinguished by the purchase money, is not to be affected by them in relation to the other lien creditors, let the event turn out as it may. But, it is said, he has no conscionable right to retain, inasmuch as more would have been produced by the sale had the incumbrance been truly represented. Although the fact may be so, it cannot be affirmed with certainty. Every man is presumed to know the law, and the bidders may have ascertained the sheriff's mistake previous to the sale. Even that counsel was employed to inspect the record, is far from improbable. But were the fact clearly otherwise, it would be without weight. It will not be pretended that a judicial sale, subject to a mortgage which had in fact been extinguished, would give the mortgagee a right to recover the money over again, or authorize the sheriff to charge the difference as purchase money; and, in principle, what is the case before us but just that? Such a charge would be inconsistent with the express terms of the sale. On the other hand, were the sheriff to represent an incumbrance to be less than the sum actually due, no one will pretend that the creditors would be bound to make up the difference; and the plainest principles of justice require that the chances of loss or gain, in this respect, should be equal. In its very essence the contract has respect to that contingency; and the only remedy for a misrepresentation not fraudulent, but affecting the rights of either party, is an application to set aside the sale. In the case at bar, the creditors having suffered the contract to be consummated by acknowledgment of the deed, are concluded by its terms.

Judgment of the Common Pleas reversed, and judgment for the defendant below.