## Fenton v. Joki et ux. Abel's Appeal.

Argued October 2, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

310

*C. H. Akens,* with him *William E. Porter,* for appellant.—There was no ground for setting aside the sale: Myers's Est., 192 Pa. 458; Stroup v. Raymond, 183 Pa. 279; Collins v. Assurance Corp., 165 Pa. 298; Hollister v. Vanderlin. 165 Pa. 248; Felton v. Felton, 175 Pa. 44; Young's App., 2 P. & W. 380; Cooper v. Wilson, 96 Pa. 409.

*Clyde Gibson* and *Robert White,* for appellee, were not heard.

OPINION BY MR. JUSTICE FRAZER, November 26, 1928:

This appeal by a purchaser at a sheriff's sale is from an order of the court below setting aside a sheriff's sale of real estate. A petition was filed in the court below by J. Henry Kline, a judgment creditor of the execution debtor, alleging gross inadequacy of price and an agreement among other creditors, participated in by the purchaser, to prevent competitive bidding. It was also charged that the public notice of the sale was insufficient and misleading in that it described the premises as one lot instead of two, and that there was undue haste in conducting the sale. The court below found no merit in the contention that the property was improperly described, since the description in the mortgage under

which the property was sold was followed. It also found that the action of the sheriff was beyond criticism in proceeding with the sale on the properly advertised day, although the præcipe upon which the execution was founded, had inadvertently named the first Monday of the following month as the return day. With these conclusions we agree, and these two charges are consequently out of the case. We are here concerned only with the questions of the inadequacy of price and lack of competitive bidding.

Defendants in the execution, Eli Joki and wife, were the owners of a lot 40 feet in width and approximately 225 feet in depth, upon which were erected two frame dwelling houses. The entire lot was covered by a first mortgage of $2,500, to Catherine Kimberly, now deceased and a second mortgage of $2,000. Subsequent to the dates of these mortgages, and previous to the entry of the judgments later referred to, defendants sold to Nestor Pirkkala and his wife the house on the rear end of the property and a part of the land 40 feet in depth, taking their bond and mortgage for $2,900. This debt had been reduced to $2,300 at the time of the sheriff's sale, and the mortgage had become the property of the C. Ed. Smith Hardware Co.

Petitioner's judgment, for $1,605 was entered after the date of the first and second mortgages, and after the sale of the rear of the property to the Pirkkalas. It became a third lien on the property of defendants. There was also a later judgment for $1,600 in favor of the C. Ed. Smith Hardware Co. This was also a lien upon only that part of the property retained by defendants.

Two conferences of the creditors of defendants had been held in an effort to agree upon a plan for a sale of the property and distribution of the proceeds without a judicial sale. Petitioner and the other creditors were represented at these conferences; upon failure of the negotiations to result in a conclusion satisfactory to all parties, judgment was confessed on the bond accompany-

ing the first mortgage, thereby securing a judgment upon the mortgaged property relating back to the time of the recording of the mortgage. Execution was issued upon this judgment on December 29, 1927. Through inadvertence in preparing the præcipe, the writ was made returnable the first Monday of March, 1928, although ordinarily the return day would have been the first Monday of February. In any event, this does not seem to have been noticed, and the property was duly advertised for sale on the first Monday of February. Apparently all interested parties had notice that the sale would take place on that day.

At the hour advertised, William E. Porter, the attorney representing the owners of the first and second mortgages, the C. Ed. Smith Hardware Co. and the Pirkkalas, was present at the courthouse. Nestor Pirkkala was also there, but took no part in the proceedings. Several friends of defendants and of the Pirkkalas attended the sale, but none of them was apparently in a position to bid. Robert White, the attorney representing petitioner, was fifteen minutes late in arriving. The manager of petitioner's business was present, but was not authorized to bid. In the meantime the sale had been made. Porter bid $3,000, and, there being no other bids, the property was sold to him. On the same day, the sheriff made a deed to John S. Abel, appellant. This deed was acknowledged the following day and immediately recorded.

Although the property was sold for $3,000, appellant paid in full the first and second mortgages, costs thereon, and accrued taxes, amounting in all to $5,306.02. He also executed and delivered to the Pirkkalas a deed for the property previously sold to them by defendants, and the Pirkkalas executed a mortgage for $2,300 to one Kleckner. At the same time, appellant executed a mortgage for $3,000 to G. L. Reno, Minnie Dufford, and William E. Porter, guardian, covering the remainder of the land.

Where, following a sheriff's sale, there has been an acknowledgment, delivery and recording of a sheriff's deed, a rule to set aside the sale is, in the absence of fraud, too late: Lengert v. Chaninel, 208 Pa. 229. In the present case the sheriff's deed was acknowledged, delivered and recorded on the day following the sale, and before proceedings were begun to set it aside. There was no proof of fraud. The acknowledgment and delivery of the deed, however, directly violated section 4 of the Act of April 22, 1905, P. L. 265, which provides as follows: "No deed shall be acknowledged before the return day of the writ under which the sale was had, or pending a motion to set aside the sale, or exceptions made to its confirmation; nor shall a deed be delivered while such a motion or exceptions are pending, whether made before or after acknowledgment, and until the expiration of such further time, if any, as the court may direct by rule, or special or standing order." It is to be noted that the return day in the writ was the first Monday of March, 1928.

We agree with the court below that the evident purpose of the above quoted section was to give those who desire to object to the sale an opportunity to do so, and that the deed in this case might, under the circumstances, be treated as not acknowledged or delivered. It was not, consequently, necessary that fraud be established.

The court below found as a fact that the price realized at the sale was grossly inadequate. It was agreed on the argument of the case in the court below that the property was reasonably worth $9,000, whereas it was sold for $3,000.

That mere inadequacy of price, without more, is not sufficient ground for setting aside a sheriff's sale requires no citation of authority. It is equally well settled that where the price is shown to be grossly inadequate, the court may seize upon other circumstances to give relief. What other circumstances were there in the

present case tending to warrant the order of the court below?

When the sale took place, only one bid was made. If this was the result of an agreement among the other creditors not to bid against each other, the lack of competitive bidding was sufficient ground for setting aside the sale: Phelps v. Benson, 161 Pa. 418, 421. In 23 C. J. 647, it is said: "It is the policy of the courts to discountenance combinations or agreements on the part of bidders at execution sales, the object and effect of which are to stifle competition, and the courts will deny to any party to such agreement or combination any benefit from the sale and set it aside upon proper motion, unless all parties concerned know the arrangement and assent thereto."

In the case before us there is no direct evidence of an agreement to prevent competitive bidding, but an inference that such an agreement was made can fairly be drawn from the facts. The learned judge of the court below correctly analyzed the situation as follows: "There were at least four lien creditors interested in this sale. One attorney represented the first, second and fourth of these creditors. The third lien creditor was represented by another attorney. The former attorney attended the sale and made but one bid, upon which the property was sold. Deed was made to Abel [appellant], a member of the firm constituting the fourth lien creditor. Abel paid off the first and second lien creditors, this requiring him to pay more than his bid. Those payments were made as a gratuity or in accordance with an understanding or agreement. No one would seriously contend, nor is there a contention, that these payments by Abel were gratuities or gifts to the owners of the mortgages. We are thus driven to the position that they were made pursuant to an agreement or understanding and that the understanding was among these three lien creditors represented by one attorney, that the owners of the mortgages would refrain from bidding

and permit the fourth lien creditor to purchase the property provided he would pay the indebtedness due the mortgagees. This conclusion is irresistible."

The findings of the court below were supported by the evidence, and we fully agree with its conclusions. We find no abuse of discretion. It follows that the order setting aside the sale should be affirmed.

The order setting aside the sale is affirmed.