First National Bank of Koppel, for use, Appellant, *v.* Mount et al.

Argued May 5, 1938. Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Stewart P. McConnel,* with him *William A. McConnel & Sons,* for appellant.

*John G. Marshall,* of *Moorhead & Marshall,* with him *Frank E. Reed,* for appellee.

OPINION BY PARKER, J., September 28, 1938:

The appellant, plaintiff in an execution affecting real estate, asks us to reverse an order of a court of common pleas setting aside a sheriff's sale and confirming a later sale to the same purchaser on a bid lower than that made at the first sale. We are all of the opinion that the court below did not abuse its discretion in making the order of which complaint is made.

The subject is one belonging to a class where the courts are entrusted with a discretionary power to be exercised in view of all the circumstances presented to them for consideration. It is settled that whether the order be the setting aside or the refusing to set aside a sheriff's sale, the order of the court below will not be disturbed unless there be a manifest and gross abuse of that discretion: *Germer v. Ensign, Admr.,* 155 Pa. 464, 26 A. 657; *Stroup v. Raymond,* 183 Pa. 279, 281, 38 A. 626; *Laird's Appeal,* 2 Pa. Superior Ct. 300; *Snyder v. Snyder,* 244 Pa. 331, 90 A. 717; *Somerville v. Hill,* 260 Pa. 477, 104 A. 62; *Lefever v. Kline,* 294 Pa. 22, 143 A. 488.

The sheriff, on a writ issued by the plaintiff, advertised for sale at 10 A. M., March 1, 1937, ten acres of land and also certain building lots described by number as six building lots in plan No. 1, forty-eight lots in plan No. 2, and sixteen lots in plan No. 3, which plans were laid out by the defendant in the execution. There were delinquent taxes amounting to $1,335.14 levied against the land advertised. It had been, for a considerable period, the custom of the county commissioners of Beaver County to appoint the treasurer of the county to attend sheriff's sales of real estate against which there were delinquent taxes due and to bid a sum sufficient to cover such taxes. In this case the county commissioners had authorized Gerald Golden, deputy county treasurer, to attend this sale and make a bid sufficient to cover delinquent taxes and costs of sale.

The deputy treasurer of the county attended the sale at the appointed time with authority to bid the amount of taxes and costs. At that time the attorney for the appellant, the execution creditor, endeavored to persuade Mr. Golden not to bid at the sale. Not being successful in preventing bidding by Golden, plaintiff's attorney then directed the sheriff in writing to sell only six lots from plan No. 1, eight lots from plan No. 2, and fifteen lots from plan No. 3, designating by number the particular lots to be sold. The taxes had been assessed against the properties advertised in such a manner that it was a considerable task and required some time to determine the amount of the delinquent taxes chargeable to particular lots. Mr. Golden asked for an adjournment until a computation could be made and until he could ascertain the amount that should be bid. By agreement the sale was continued until 2 P. M. the same day. At the later hour, the attorney for the plaintiff, when he found Mr. Golden was still ready to bid, cancelled the order of the morning and gave a new order directing the sheriff to sell twenty-four lots from plan No. 2 and one lot from plan No. 3. None of the lots on this second list was on the list given the sheriff in the morning. Mr. Golden then endeavored to get a further adjournment which counsel for plaintiff refused and the sheriff proceeded to sell the lots named in the second order. Golden then bid the sum of $1,335.14 and the lots were knocked down to the commissioners. The commissioners, discovering that a sum considerably in excess of the amount necessary to protect their lien had been bid, refused to make the bid good and the same lots were resold on Saturday, March 6, at 10 A. M., to the county commissioners for the sum of $558.59. The second sale was made pursuant to the terms of the written advertisement given by the sheriff providing for situations where bids were not made good. The county commissioners then presented a petition to the court below

stating the facts in much detail and praying the court to set aside the sale made on March 1, 1937. After depositions taken and argument, the court granted the prayer of the petition and directed the sheriff to proceed with the consummation of the sale of March 6, 1937.

The only objections to granting the petition came from the plaintiff in the execution. It appeared from depositions taken that all parties in interest present at both sales understood that Mr. Golden was bidding for the county commissioners of Beaver County and that they were acting only for the purpose of collecting the delinquent taxes due and chargeable to the land sold. It also appeared that the lands finally sold did not exceed in value the amount bid at the second sale, that the lots advertised had little or no value as building lots, and that they were only valuable as acreage.

Good faith requires that the application to set aside a sheriff's sale should be made promptly. Where, following a sheriff's sale, there has been an acknowledgment and delivery of a sheriff's deed, a rule to set aside the sale is, in the absence of fraud, too late: *Fenton v. Joki*, 294 Pa. 309, 313, 144 A. 136; *Knox v. Noggle*, 328 Pa. 302, 305, 196 A. 18; *Girard Trust Co. v. Dempsey*, 129 Pa. Superior Ct. 471, 477, 196 A. 593. Here the application was made before acknowledgment or delivery of the deed and with reasonable speed under the circumstances.

We cannot convict the court below of an abuse of discretion. This is a contest solely between the execution creditor and the purchaser and it is clear that Mr. Golden exceeded his authority in bidding a price much greater than the amount which the commissioners authorized him to bid and more than twice the value of the land offered for sale on the afternoon of March 1. The extent of Mr. Golden's authority and the persons for whom he was bidding were known to the execution creditor's attorney who was present at the sale repre-

senting that creditor, and were likewise known to the sheriff. The testimony supports the statement in the opinion of Judge WILSON: "The doctrine of *caveat emptor* does not go so far. The fault here was all on the side of the use plaintiff, and the bids of the County Commissioners were made in good faith. The resale was held to correct a confusion and misunderstanding, directly and possibly intentionally, caused by the use plaintiff. If the use plaintiff has suffered it was caused by her acts, and not the acts of the County Commissioners."

The tactics of the attorney for the execution creditor were responsible for the confusion and misunderstanding. In the first place, he endeavored to persuade Mr. Golden not to bid at the sale, if he did not endeavor to alarm him so as to prevent any bid by the county. On the morning of March 1, he directed only a portion of the lots to be sold when he should have known that an advantageous sale of the premises could not be made in that manner, since with the exception of two lots on which there were improvements the lots had little or no value as building lots and would bring a much better price if sold as acreage together with adjoining lots. In addition, when the sale was proceeded with in the afternoon the attorney not only again offered only a part of the lots for sale, but deliberately changed the order for the lots that would be sold, designating different lots, so that he would place the county commissioners in the same position as they were in on the previous occasion that same day. He apparently did this knowing that the bidder was not an attorney and that he would be embarrassed and confused. The result was that when the sale was not continued the commissioners' agent was not in a position to know the exact amount that should be bid to cover taxes and costs, with the result that he exceeded his authority and bid more than the taxes and more than the market value of the land.

The statutory law and the decisions of the courts make it clear that sales of real estate should be made only after a reasonable notice to the end that all interested may be advised and may know just what property is being sold and that, if possible, a fair price be obtained. We are driven to the conclusion that Golden was confused and misled and that plaintiff was responsible for that situation. When Mr. Golden asked for a postponement of the sale on the afternoon of March 1, for a sufficient time to ascertain the amount of the taxes chargeable to the particular lots that were then to be sold, the sheriff should have continued the sale. That he did not do so was chargeable directly to the attorney for the plaintiff and the plaintiff must bear the consequences of the attorney's conduct.

"In the exercise of a reasonable discretion, the courts have not been rigid in the application of the maxim *caveat emptor* to judicial sales, but have always liberally interfered for the protection of an erring purchaser untainted by fraud": *Crawford v. Boyer,* 14 Pa. 380, 383. We are satisfied that the bid was made not only without authority by Mr. Golden, but under a misapprehension of the facts, and that the plaintiff was responsible for the misapprehension and confusion which resulted. No one except the plaintiff is complaining. Not only was there no abuse of discretion, but in our opinion the lower court wisely exercised the discretion reposed in it.

The order is affirmed at the costs of the appellant.