## Scranton Building Association No. 10 *v.* Murray, Appellant, et al.

558

Argued March 8, 1944. Before KELLER, P. J., BALD-RIGE, RHODES, HIRT, KENWORTHEY, RENO and JAMES, JJ.

*William A. Bissell, of Stark, Bissell & Reifsnyder,* for appellant.

*Robert Robinson, of Taylor, Taylor & Robinson,* for appellee.

*Thomas J. Foley,* for sheriff's vendee.

OPINION BY KELLER, P. J., April 11, 1944:

Petition by John Murray, one of the Executors of Ellen C. Murray, deceased, and, individually, as a real owner and terre-tenant, to set aside a sheriff's sale of real estate, sold under a writ of levari facias, issued upon a judgment obtained in a scire facias sur mortgage. Rule granted on the plaintiff in the writ, with notice to the sheriff's vendee. Answer filed by the mortgagee plaintiff. No testimony was taken rebutting the averments of the answer. Rule discharged by the court below on two grounds: (1) The petition did not set forth legal ground for setting aside the sale. (2) It was filed too late, delivery of the sheriff's deed having been made prior to its filing. The petitioner appealed. The court was right on both grounds.

(1) The mortgage in suit was a 'building and loan association' mortgage given by Ellen C. Murray, widow, on July 6, 1940 to the plaintiff, Scranton Building Association No. 10, for $1,600. The principal was not due on any fixed date. It called for the payment of monthly interest on the principal sum and the regular monthly instalment or dues of one dollar per share on eight shares in the 66th series of capital stock of said association (assigned to it as collateral security) until the net assets of said association were sufficient to pay $200 for each unredeemed share in said series, at which time the principal sum would be paid by the matured stock.

The mortgagor covenanted in said mortgage to pay all taxes and keep the buildings insured against fire for the benefit of the mortgagee in an amount not less than $1,600, and failing to do so agreed to pay the said mortgagee whatever amount it had paid for taxes and maintaining said fire insurance.

The mortgage also provided that if the mortgagor or

her legal representatives [a] neglected to pay said regular instalments or dues of eight dollars per month for the space of six calendar months, or [b] allowed six months' interest to be in arrears and unpaid, or [c] neglected to pay taxes or insurance as aforesaid, then the whole of said principal sum of $1,600 with interest due thereon should immediately become due and payable and recoverable; "and it shall and may be lawful for the association aforesaid ...... to sue out forthwith a writ of scire facias upon this present indenture of mortgage and to prosecute the same to judgment and execution, to recover the principal money hereby secured, and all interest on loans as well as any dues and fines on said shares of stock then due, together with all costs of insurance and expenses of collection ...... besides costs of suit, etc."

Taxes for the years 1940, 1941 and 1942 amounting to $313.80 were unpaid on July 1, 1943, when the mortgagee, probably to save liens for taxes being filed and the costs incident thereto, paid them. Appellant takes the position that the mortgagee had to wait for six months after it paid the taxes before it could sue out a writ of scire facias to recover the principal money secured by the mortgage; but the mortgage does not so provide. The six months period which must elapse before a default can authorize the suing out of the writ of scire facias is limited to (a) the payment of monthly dues or instalments, and (b) the payment of monthly interest. No such period of delay is allowed the mortgagor for the payment of taxes or insurance. The duty to pay them as they fall due is absolute. The mortgagee is specifically authorized to pay them if the mortgagor fails to do so, and, in such case, the mortgagor agreed to pay the mortgagee the amount so paid. But that did not exhaust the given remedies of the mortgagee if the mortgagor or her legal representatives neglected to pay the taxes as they fell due. The mort-

gage specifically provides that in case of the mortgagor's neglect or default to pay the taxes—payment of which had been expressly assumed by her—the whole of said principal sum of $1,600, with interest due thereon, should immediately, at the option of the mortgagee, become due and payable and recoverable; and it should be lawful for the association to sue out *forthwith* a writ of scire facias on the mortgage and prosecute the same to judgment and execution. The mortgagee was not required to *pay* the taxes in order to do this. On default by the mortgagor or her legal representatives in payment of taxes the mortgagee could at once proceed to sue out the mortgage, the taxes being payable as a prior lien out of the proceeds of sale under the writ of levari facias. Its payment of the unpaid delinquent taxes to forestall liens, etc. did not operate to postpone for six months its immediate right to sue out a writ of scire facias and proceed to judgment and execution.

Furthermore, it is averred in the answer and not denied by the appellant, that prior to the payment of said taxes by the mortgagee, one of the executors— Mrs. Murray died in May 1942, and by her will left the mortgaged real estate to her sons, John and James, and appointed them executors—informed the association that they were no longer able to make payments on the mortgage and would be unable to make any future payments as called for by it.

Accordingly on July 12, 1943, a writ of scire facias was issued and duly served on the said John Murray and James Murray, Executors of Ellen C. Murray, and also on them as real owners and terre-tenants of the mortgaged real estate, as they were named and designated in said writ. No appearance was entered in said scire facias by the executors nor was any appearance entered for them or affidavit of defense filed by them, as real owners and terre-tenants, and judgment was entered against them respectively on September 1, 1943

for $1,716.62 real debt, including the taxes paid as above, $313.80, and a writ of levari facias issued the same day, pursuant to which the sheriff levied upon the mortgaged real estate and sold the same on October 1, 1943 to Thomas Conrad for $2,275, an amount sufficient to pay the debt, interest and costs under the writ and leave $369.12 to apply on a second mortgage of $500 also held by the mortagee, which was discharged by the sale.

The suggestion of the petitioner, that the selling price of $2,275 was inadequate and that he is "assured" that at least $2,500 would be secured upon a resale, was correctly disposed of by the court below. The difference between the sale price and the suggested value, ($225), was not such as to shock the conscience of the court, and no fraud on the part of the plaintiff was either alleged or shown. Furthermore "assurances" unsupported by assets are easy to give. Sales are not set aside for alleged inadequacy on such uncertain security; nor after delivery of the deed: *Knox v. Noggle,* 328 Pa. 302, 305, 196 A. 18.

(2) The sheriff's sale was held on October 1, 1943. The knock down price was paid by the purchaser, Thomas Conrad, and the sheriff acknowledged the deed to him before the Prothonotary on October 9, 1943, and it was delivered to the Recorder of Deeds for recording—equivalent to delivery to the grantee (Act of April 22, 1905, P. L. 265, Sec. 4) before November 3, 1943, when appellant first presented his petition to set aside the sale.

The Supreme Court and this court have had occasion to point out in a number of recent cases, that after delivery of a sheriff's deed, following its acknowledgment in due course, a petition to set aside a sheriff's sale cannot be considered. See *Knox v. Noggle,* supra; *Warren Pearl Works v. Rappaport,* 303 Pa. 235, 154 A. 587; *Tonge v. Radford,* 103 Pa. Superior Ct. 131, 156

A. 814; *Fenton v. Joki,* 294 Pa. 309, 144 A. 136; *Media T. & T. Co. v. Kelly,* 185 Pa. 131, 39 A. 832; *H. O. L. C. v. Edwards,* 329 Pa. 529, 531, 198 A. 123. "A weakening of the rule ...... would seriously impair the stability of titles acquired through sheriff's sales." *Knox v. Noggle,* supra, p. 305. See also Act of April 22, 1905, P. L. 265.

The court below was justified in referring to its records in the case, even though not specifically averred in the answer.

It was the court's right, if not its duty, to apply the law to the facts as they appeared from the records before it, even though the litigant may not have deemed it necessary to rely upon that feature of the case.

Order affirmed at the costs of the appellant.