422 A.2d 1082

**Marilyn K. BARALE,**

v.

**Steve BARALE, Appellant.**

Superior Court of Pennsylvania.

Submitted April 12, 1979.

Filed Oct. 10, 1980.

Wray G. Zelt, III, Washington, for appellant.

Gordon F. Harrington, Washington, for appellee.

Before CERCONE, President Judge, and WIEAND and HOFFMAN, JJ.*

CERCONE, President Judge:

This is an appeal from the order entered August 15, 1978, in the Court of Common Pleas of Washington County, Pennsylvania. The primary issue is whether the court below erred in withholding certain designated amounts from the share of the partition sale proceeds due the appellant.

During the course of their marriage, appellant, Steven Barale, Jr., and his ex–wife, Marilyn Barale, became the owners of the house and lot located at 105 Barale Drive, Washington, Washington County, Pennsylvania. Following the grant of divorce, appellant's ex–wife filed a complaint in partition for the appointment of a trustee pursuant to

---

* WIEAND, J., did not participate in the consideration or decision of this case.

statute. The Chancellor appointed a trustee, an attorney at law, to make public sale of the real estate jointly owned by the Barales as tenants by the entireties, to make a return of sale, and after confirmation by the court to distribute the net proceeds equally between husband and wife.

The trustee, after proper notice, conducted the sale on September 13, 1977. The highest bid was received from Andrew A. D'Alessandro and Theresa K. D'Alessandro in the amount of $50,000, and the trustee accepted $5,000 from the successful bidders as hand money. Subsequently, the trustee asked the Chancellor to confirm his return of sale. This was done on October 19, 1977, and the trustee was ordered to deliver a deed of special warranty to the D'Alessandros, the purchasers, at the closing which occurred on November 4, 1977. Following this, a second return of sale was issued wherein the trustee suggested that additional sums were to be deducted from the appellant's proceeds. Exceptions to this second return of the trustee were filed on November 22, 1977, by appellant and by the D'Alessandros. Among other things, appellant contended that it was improper to withhold the amount of $1,105.97 from his share of the proceeds to compensate the D'Alessandros for the missing front door, dishwasher and curtain rods.[1] On the other hand, the D'Alessandros by filing their exceptions sought reimbursement for the costs, expenses and losses incurred in litigating their right to an adequate water supply.

To fully understand the importance of these exceptions, some background information is necessary. Upon obtaining possession of the property, the D'Alessandros discovered that the water supply had been cut off by Steve Barale, Sr., father of appellant and an adjacent property owner. The D'Alessandros also discovered that the front door, a built–in dishwasher and curtain rods had been removed from the

---

1. As itemized in the Trustee's Final Return of Sale, the total amount withheld was to cover the cost of:

| | |
|---|---|
| Replacement and installation of front door | $ 403.10 |
| Replacement and installation of dishwasher | 540.34 |
| Replacement and installation of curtain rods | 162.50 |
| | $1,105.97 |

premises by appellant. The trustee in partition and the purchasers sought unsuccessfully in separate actions to secure an injunction requiring that the water supply be restored. Consequently, the buyers contracted to have a well drilled to obtain water for their property. The purchasers also bought a door, dishwasher and curtain rods to replace those items which appellant had removed.

A hearing on the exceptions was held on February 28, 1978, before the Honorable Thomas D. Gladden, Jr. In his order, Judge Gladden accepted the trustee's estimates for the replacement of the door and dishwasher and permitted the trustee to pay over to the buyers the sums of $403.10 and $540.37 respectively, but he granted appellant's exception to the replacement and installation of the curtain rods. Additionally, Judge Gladden permitted the trustee to withhold the sum of $2,000 from the proceeds due appellant pending final outcome of the litigation concerning the water supply.[2] Appellant and his ex–wife filed exceptions to this February 28, 1978 order. Following this, the D'Alessandros petitioned for payment of expenses. In this petition, the D'Alessandros noted that they had discontinued their appeal in our Superior Court from the lower court's dismissal of their complaint against the senior Barale concerning the water rights. Moreover, they included the estimate of $2,284.00 they had received from the Finleyville Drilling Company, Inc. for the digging of a well, and requested that the trustee be ordered to pay over this amount to them. Thereafter, on April 26, 1978, Judge Gladden issued a rule to show cause why he should not grant the buyers' petition for expenses. Both appellant and his wife filed timely answers to the rule to show cause. These exceptions were argued before the court en banc on August 2, 1978. It is from that court's August 15, 1978 order that appellant takes this appeal.[3]

2. A similar sum had also been withheld from the amount to be awarded appellant's ex–wife, Marilyn Barale, on November 28, 1977.

3. A similar appeal was filed by Marilyn Barale, but it was withdrawn.

Appellant maintains that the court below erred in withholding certain sums of money from his share of the proceeds of the partition sale: namely, appellant faults the court below for withholding $943.47 which sum represented the compensation awarded the purchasers for replacement of the dishwasher and front door, and the sum of $2,000 which was to compensate the purchasers for having a well drilled on the property. Because we agree that the court below erred in withholding these amounts from appellant's share of the partition sale proceeds, we reverse.

■ The partition sale involved in the instant matter is governed by the Act of May 10, 1927, P.L. 884, 68 P.S. § 501 et seq. (1965), which essentially provides for the partition and sale of an estate held by the entireties when the tenants divorce. According to the statute, a tenancy by the entireties converts to a tenancy in common after the parties divorce, and either party can seek to partition the property.[4] Because the act is in derogation of the common law concerning property held by the entireties, it must be strictly construed. *Lykiardopoulos v. Lykiardopoulos*, 453 Pa. 290, 309 A.2d 548 (1973); *Lazare v. Lazare*, 365 Pa. 591, 76 A.2d 190 (1950).

■ In this respect, we must give full recognition to that part of the statute which specifically deals with the division

4. The pertinent section of the act which converted a tenancy by entireties to a tenancy in common reads:

§ 501. Divorced tenants by entireties hold as tenants in common; suit for sale and division of proceeds

Whenever any husband and wife, hereafter acquiring property as tenants by entireties, shall be divorced, they shall thereafter hold such property as tenants in common of equal one–half shares in value and either of them may bring suit in the court of common pleas, sitting in equity, of the county where the property is situate, against the other to have the property sold and the proceeds divided between them. The summons in such suit shall be served in the same manner and with like effect as in cases of partition at law.

At the hearing on such suit both husband and wife shall be competent witnesses. The value of the property shall be proven by the testimony of at least two impartial and disinterested witnesses. 68 P.S. § 501.

of proceeds from a partition sale. Section 3 of the Act of May 10, 1927, as amended, provides:

> The proceeds of any sale had under the provisions of this act ... shall be equally divided between the parties, *subject, however, to the deduction therefrom of the amount of any lien entered of record jointly against both of the respective parties*, together with any interest due thereon and docket costs ... *and the amount of any liens entered of record against either such parties*, together with interest due and costs taxed thereon, shall be deducted from the share of the party against whom such lien is filed .... 68 P.S. § 503 (1965) (emphasis added).

The statutory language is clear—only liens of record may be deducted from the proceeds of the partition sale. The clarity of this provision was underscored by our Pennsylvania Supreme Court in *Lykiardopoulos v. Lykiardopoulos, supra*, where the court wrote, "The statute provides for the payment of recorded liens out of the proceeds of the partition sale, and they are the only charges permissible." *Id.* 453 Pa. at 294, 309 A.2d at 551. The *Lykiardopoulos* court went on to hold that "the only deductions which may be made from the proceeds of a partition effected under the provisions of the Act of May 10, 1927, *as amended*, are liens entered of record at the time of the sale." *Id.* Instantly, because the amounts deducted from appellant's share of the partition sale proceeds were not "liens of record at the time of the sale," it was an error for the court below to approve of such deductions.

 The factual circumstances of this case prove the absence of any recorded lien. The closing took place on November 4, 1977, on which date the D'Alessandros were in receipt of the deed to the property. At this time, there were no outstanding liens of record, and especially no liens of record held by the D'Alessandros. In fact, it was only *after* the sale of the property and delivery of the deed that the D'Alessandros attempted to hold appellant liable for the

missing household articles and the lack of water.[5] Seeking compensation, the D'Alessandros requested that any expense incurred by them for replacing the missing articles and drilling a well be deducted from appellant's portion of the partition sale proceeds.[6] The court below granted these requests in subsequent actions, long after the sale was finalized.

■ In his brief, appellant also maintains that he should have been awarded interest on his share of the proceeds from the time of the closing on November 4, 1977, until the date of distribution which was February 28, 1978. Because appellant cites no authority for this proposition, we are not inclined to award such interest.

Order of the court below is reversed with directions to disburse remainder of the fund to which appellant is entitled.

5. Moreover, the D'Alessandros chose this particular course of action against appellant only after having failed in a separate action against different parties to obtain an injunction to restore the water supply.

6. This, however, was the inappropriate remedial route. Instead, the D'Alessandros should have commenced an action to set aside the sale. The Act of May 10, 1927, P.L. 884, 68 P.S. § 502 (1965) provided that property sold under the authority of the act "shall have the same effect in all respects as a public sale in partition of real estate." In Pennsylvania, a partition sale is considered a judicial sale. *See Kaufmann v. Pittsburgh*, 248 Pa. 41, 93 A. 779 (1915); *Girard Life Ins. Annuity & Trust Co. v. Farmers & Mechanics Bank*, 57 Pa. 388 (1868). Where the rights of either party to a judicial sale have been adversely affected by non–fraudulent misrepresentations, the only remedy is an application to set aside the sale. *Reigle v. Seiger*, 2 Pen. & W. 340 (1831). Where, however, there has been a delivery of the deed, as evidenced in the instant case, setting aside the sale must be premised upon fraud or want of authority to make the sale. *Appeal of Petrovich*, 155 Pa.Super. 138, 38 A.2d 709 (1944); *First Nat. Bank of Koppel v. Mount*, 132 Pa.Super. 518, 1 A.2d 547 (1938); *Beckman v. Altoona Trust Co.*, 332 Pa. 545, 2 A.2d 826 (1938).